CHARLES J. WILLIAMS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GRACE McDONALD WILLIAMS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 4255, 4256.   Promulgated August 27, 1945.

*John S. Breckinridge, Esq.*, for the petitioners.
*E. E. Strickland, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge*: The sole issue is whether the sum of $20,000 represents ordinary income, as has been determined by the respondent, or whether it resulted in a gain on a sale or exchange of a capital asset, as is contended by the petitioners.

We think it clear the sum in question is taxable to the petitioners in its entirety as ordinary income, irrespective of whether the "general agency" which the petitioner contracted to purchase be characterized as a capital asset.

Under the terms of the contract of sale petitioner, as buyer, agreed to continue the agency for 2½ years, later extended to 5½ years, and to exercise his best ability to maintain and increase the business received by the sellers. It was further provided that "as part of the consideration for this sale and without any additional or other compensation," the petitioner "would assume jurisdiction over and supervise the business written prior to July 1, 1937," and would "use and exercise his best ability to collect the outstanding balances or accounts due from assureds, agents or others in connection with business written prior to July 1, 1937." The sellers agreed that the petitioner should have possession of the agency after July 1, 1937, and the right to conduct and operate the same so long as he should not be in default of any of the terms or conditions of the agreement. The contract expressly provided that the ownership and title of the agency should be and remain in the seller until such time as the petitioner should have performed and carried out all of the terms and conditions in the agreement. The contract further provided that if the petitioner, for any reason, failed or declined to carry out the agreement the sellers, at their option could reenter the premises and recover possession of the property. Petitioner agreed that in such event any increase in premiums in force over and above the premium volume of June 30, 1937, should belong to the general agency and to the sellers as liquidated damages.

The petitioner paid out no money or other property and it is apparent that no gift was intended. The ownership of the general agency

was to pass to petitioner in return for services he was to perform. Hence, irrespective of whether the property be in the nature of a capital item, its fair market value at the time of its receipt would constitute ordinary income to the petitioners.[1] See *William T. Bivin*, 21 B. T. A. 1051; *Hitner* v. *Lederer*, 63 Fed. (2d) 877; *Mason* v. *Commissioner*, 125 Fed. (2d) 540; *Hawaiian-Philippine Co.*, 35 B. T. A. 173.

Petitioner, though having possession and use of the general agency, never came into its ownership, since the contract was canceled at a time when there was approximately one year of the performance period left to run. Thus, he could not have sold or exchanged a capital asset even if it be conceded that the general agency is in that category. At most, the petitioner received the sum of $20,000, or some part thereof, in lieu of his contractual rights. That cash payment measured his reward for the services he rendered. Cf. *George K. Gann*, 41 B. T. A. 388; *Fritz Worm*, 22 B. T. A. 36; affd., 61 Fed. (2d) 868. In *Elliott B. Smoak*, 43 B. T. A. 907, which is the case upon which petitioner most strongly relies, the taxpayer had owned for a period of more than two years the agency which was the subject of the sale.

Petitioners have not claimed or attempted to evaluate for the purposes of this proceeding an equity in the enhanced value of the general agency.

Moreover, we think it is clear that under the terms of the cancellation contract some part of the $20,000 was paid in consideration of petitioner's agreement not to enter into a general agency business in the State of Texas for a period of five years and for his agreement to give up his commission basis appointment as a general agent in exchange for an employment contract which was to be executed by the parties. Compensation for such considerations clearly falls in the realm of ordinary income. There is no basis in the record upon which the apportionment of that part of the payment relating to these considerations could be made.

In view of all the circumstances, we must conclude that the payment is taxable in its entirety. The parties have agreed that if the $20,000 represents ordinary income, one-half thereof is taxable to each of the petitioners herein. It is so ordered.

*Decisions will be entered under Rule 50.*

---

[1] Sec. 19.22(a)-3 [Regulations 103]. *Compensation paid other than in cash.*—If services are paid for with something other than money, the fair market value of the thing taken in payment is the amount to be included as income. * * *